### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

|  |  |
|---|---|
| MEDLIANT INC., <br><br> *Plaintiff,* <br><br> *v.* <br><br> ELIAHKIM MABUTE, <br><br> *Defendant.* | Civ. Action No.: <br> 1:23-cv-00419-MAC |

### DEFENDANT ELIAHKIM MABUTE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY AND MEMORANDUM IN SUPPORT

## <u>TABLE OF CONTENTS</u>

MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR,
IN THE ALTERNATIVE, TO STAY ....................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY ........................... 1

I.    STATEMENT OF ISSUES ............................................................................ 1

II.   INTRODUCTION ....................................................................................... 1

III.  RELEVANT BACKGROUND ........................................................................ 3

     A.    Factual Background ......................................................................... 3

     B.    Procedural Background ..................................................................... 4

IV.   LEGAL STANDARD .................................................................................. 5

     A.    The Standard for Dismissal for *Forum Non Conveniens* .......................... 5

     B.    The Standard for Dismissal Under Rule 12(b)(6) ................................... 6

     C.    The First-to-File Rule ....................................................................... 6

V.    ARGUMENT .............................................................................................. 7

     A.    The Court Should Dismiss Medliant's Complaint for *Forum Non Conveniens* ..... 7

          1.    The Forum Selection Clause Is Mandatory. ................................. 8

          2.    No Public Interest Considerations Outweigh The Parties'
Choice of Forum ................................................................... 11

     B.    The Court Should Dismiss for Failure to State a Claim .......................... 12

          1.    Federal Law and Regulation Prohibit Medliant's Recovery of
Immigration Costs and Expenses .............................................. 13

          2.    The Attorneys' Fees and Costs Provision is Unconscionable and
Unenforceable ...................................................................... 14

          3.    Plaintiff's Claim for Liquidated Damages is an Unenforceable Penalty .. 16

4.    There is No Valid Contract Because the Contract at Issue is Void as Against Nevada's Public Policy.................................................................. 17

C.    Alternatively, the Court Should Dismiss, Stay, or Transfer This Action Pursuant to the First-to-File Rule........................................................... 19

VI.    CONCLUSION................................................................................................................ 23

## TABLE OF AUTHORITIES

**CASES**

*All Star Bonding v. State*,
119 Nev. 47 (2003) ......................................................................... 13

*Am. First Fed. Credit Union v. Soro*,
131 Nev. 737 (2015) ............................................................... 7, 8, 10

*Ambraco, Inc. v. Bossclip, B.V.*,
570 F.3d 233, 237-38 (5th Cir. 2009) ......................................... 5

*Anvui, LLC v. G.L. Dragon, LLC*,
123 Nev. 212, 163 P.3d 405 (2007) ............................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 6

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*,
571 U.S. 49 (2013) ............................................................. 5, 7, 11

*Burch v. 2d Judicial Dist. Ct.*,
118 Nev. 438 (2002) ........................................................ 14, 15, 16

*Bustos v. Dennis*,
No. SA-17-CV-39-XR, 2017 WL 1049570 (W.D. Tex. Mar. 17, 2017) .................. 12

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ....................................................... 3

*Carton v. B & B Equities Grp., LLC*,
827 F. Supp. 2d 1235 (D. Nev. 2011) ......................................... 19

*Castellanos-Contreras v. Decatur Hotels, LLC*,
622 F.3d 393 (5th Cir. 2010) ..................................................... 14

*Citro Fla., Inc. v. Citrovale, S.A.*,
760 F.2d 1231 (11th Cir. 1985) .................................................. 10

*Coppola v. Baron*,
No. 2:07-cv-00664-BES-RJJ, 2007 WL 4180590 (D. Nev. Nov. 20, 2007) ......... 8, 10

*Eastman Med. Prods., Inc. v. E.R. Squibb & Sons, Inc.*,
  199 F. Supp. 2d 590 (N.D. Tex. 2002) ................................................................. 22

*Excell, Inc. v. Sterling Boiler & Mech., Inc.*,
  106 F.3d 318 (10th Cir. 1997) ............................................................................. 10

*Fed. Nat'l Mortgage Assoc. v. 8th Judicial Dist. Ct. in and for Cty. Of Clark*,
  528 P.3d 586 (Table), 2022 WL 19697697 (Nev. Dec. 22, 2022) ......................... 8, 9

*Fremont Emergency Servs. (Mandavia), Ltd. v. UnitedHealth Group, Inc.*,
  No. A-19-792978-B, 2020 WL 10353883 (Nev. Dist. Ct. June 24, 2020) .............. 19

*Frietsch v. Refco, Inc.*,
  56 F.3d 825 (7th Cir. 1995) ................................................................................... 9

*Golden Rd. Motor Inn, Inc. v. Islam*,
  132 Nev. 476 (Nev. 2016) ..................................................................................... 13

*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009) ................................................................................. 6

*Halcyon Silver, LLC v. Evelynmoe*,
  526 P.3d 1110, 2023 WL 2661524 (Nev. Ct. App. Mar. 24, 2023) .............. 14, 15, 16

*Haynsworth v. The Corp.*,
  121 F.3d 956 (5th Cir. 1997) ................................................................................. 6

*Henderson v. Watson*,
  131 Nev. 1290, 2015 WL 2092073 (2015) ............................................................ 15

*Huawei Techs. Co., Ltd. v. Yiren Huang*,
  No. 4:17-CV-00893, 2018 WL 1964180 (E.D. Tex. Apr. 25, 2018) ...................... 5, 6

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
  817 F.2d 75 (9th Cir. 1987) ................................................................................... 10

*Huntsman Corp. v. Int'l Risk Ins. Co.*,
  No. 1:08-CV-029, 2008 WL 1836384 (E.D. Tex. Apr. 22, 2008) .......................... 22

*IAC/InterActiveCorp v. Roston*,
  44 F.4th 635 (7th Cir. 2022) ................................................................................. 9

*Igloo Prod. Corp. v. The Mounties, Inc.*,
    735 F. Supp. 214 (S.D. Tex. 1990) ........................................................................ 20

*Iliescu v. Regional Trans. Comm'n of Washoe Cty.*,
    522 P.3d 453 (Nev. Ct. App. 2022) ...................................................................... 12

*In re Planned Parenthood Federation of Am., Inc.*,
    52 F.4th 625 (5th Cir. 2022) ................................................................................ 11

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
    665 F.3d 671 (5th Cir. 2011) ............................................................................... 21

*Kutty v. U.S. Dep't of Lab.*,
    764 F.3d 540 (6th Cir. 2014) ............................................................................... 13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ................................................................................. 6

*Magtoles v. United Staffing Registry, Inc.*,
    No. 21-CV-1850 (KAM) (PK), 2023 WL 2710178 (E.D.N.Y. Mar. 30, 2023) ...................... 18

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ............................................................................. 7, 21

*Marrero v. Aragunde*,
    537 F. Supp. 2d 305 (D.P.R. 2008), *aff'd*, 341 F. App'x 656 (1st Cir. 2009) ........................... 9

*Mason v. Fakhimi*,
    865 P.2d 333 (Nev. 1993) .................................................................................... 16

*Meador v. Apple, Inc.*,
    911 F.3d 260 (5th Cir. 2018) ................................................................................. 6

*Meganathan v. Signal Int'l L.L.C.*,
    No. 1:13-CV-497, 2015 WL 13906343 (E.D. Tex. June 17, 2015) ........................................ 7

*Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*,
    105 Nev. 855 (1989) ........................................................................................... 13

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*,
    67 F.4th 243 (5th Cir. 2023) .................................................................................. 6

*Paguirigan v. Prompt Nursing Employment Agency, LLC*,
    No. 17-CV-1302 (NG), 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019) .................................. 18

*Phillipps v. Wells Fargo Bank, N.A.*,
    No. 4:16-CV-420, 2016 WL 4703067 (E.D. Tex. Sept. 8, 2016) ............................................ 6

*Phillips v. Valley View Surgical, LLC*,
    498 P.3d 1290, 2021 WL 5370984 (Nev. Ct. App. Nov. 17, 2021) ........................................ 17

*Prothera, Inc. v. Zhou Ye*,
    No. 3:18-cv-00410-MMD-CLB, 2020 WL 3073345 (D. Nev. June 10, 2020) ........................ 16

*Reno Club, Inc. v. Young Inv. Co.*,
    64 Nev. 312 (1947) .............................................................................................................. 13

*S & L Birchwood, LLC v. LFC Cap., Inc.*,
    752 F. Supp. 2d 280 (E.D.N.Y. 2010) .................................................................................... 9

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ................................................................................... 20, 21, 22

*Sherman v. Smead*,
    572 P.3d 973 (Table), 2023 WL 2960621 (Nev. Ct. App. 2023) ............................................ 13

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ................................................................................................................ 5

*Sullivan v. Leo Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010) .................................................................................................. 2

*Tex. Health & Human Servs. Comm'n v. U.S.*,
    193 F. Supp. 3d 733 (N.D. Tex. 2016) .................................................................................... 2

*Twin City Ins. Co. v. Key Energy Servs., Inc.*,
    No. CIV A H-09-0352, 2009 WL 1544255 (S.D. Tex. June 2, 2009) ............................... 20, 22

*Vorrey v. City of Brownsville*,
    No. 17-cv-222, 2018 WL 7291458 (S.D. Tex. Oct. 5, 2018) .................................................. 14

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*,
    751 F.2d 721 (5th Cir. 1985) ................................................................................................ 20

*Weber v. PACT XPP Techs., AG,*
   811 F.3d 758 (5th Cir. 2016)............................................................................. 5, 11, 12

*Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.,*
   631 F. Supp. 2d 844 (N.D. Tex. 2009)..................................................................... 22

*Western Cab Co. v. Kellar,*
   90 Nev. 240 (1974)..................................................................................................... 17

*White v. Health Carousel, LLC,*
   No. MO:19-CV-00066-DC, 2019 WL 7824787 (W.D. Tex. Oct. 18, 2019).......................... 12

**STATUTES**

18 U.S.C. § 1589.............................................................................................................. 20

28 U.S.C. § 1404(a) ........................................................................................................... 8

Nev. Rev. Stat. § 200.463 ................................................................................................ 21

**REGULATIONS**

20 C.F.R. § 655.731(b)(9)(ii)............................................................................................ 16

20 C.F.R. § 656.12(b) ....................................................................................................... 16

## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR,</u><br><u>IN THE ALTERNATIVE, TO STAY</u>

Defendant Eliahkim Mabute moves to dismiss Plaintiff Medliant Inc.'s Complaint on the grounds of *forum non conveniens* and for failure to state a claim. Plaintiff's own form employment contract requires any litigation between the parties to take place in Las Vegas, Nevada, and the Court should enforce it. Even if this Court is the proper venue, Plaintiff fails to state a claim for breach of contract. In the alternative, Defendant moves the Court for a stay pursuant to the principles of comity, in light of a first-filed action involving the same parties filed in Nevada state court and currently pending in the United States District Court for the District of Nevada.

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u><br><u>PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY</u>

## I.    STATEMENT OF ISSUES

1.    Whether Plaintiff's complaint must be dismissed on grounds of *forum non conveniens* pursuant to the forum selection clause in the parties' contract, which requires resolution of any dispute arising out of the contract to be resolved in Nevada state court.

2.    Whether Plaintiff's breach of contract cause of action must be dismissed because Plaintiff fails to allege enforceable contract damages and is void as against public policy.

3.    Whether, if the Court finds that dismissal is not merited, this action should be stayed pending resolution of the first-filed action involving the same parties currently pending in the United States District Court for the District of Nevada.

## II.    INTRODUCTION

Plaintiff Medliant, Inc. ("Medliant" or "Plaintiff") is a Nevada corporation. Naturally, then,

Medliant chose Nevada as the place where disputes like this should be resolved. Medliant's contract that forms the basis for this action specifies that Medliant "chooses to utilize Nevada law for interpretation and analysis of the herein agreement as well as chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise from time to time." (Ex. 1: Agreement For Employment (the "Contract"), at ¶ 16.)[1] The venue provision further states that "[b]y signing below, you agree to Medliant's choice of venue and choice of law." (*Id*.) This language is the contract Medliant seeks to enforce against Defendant Eliahkim Mabute ("Mr. Mabute" or "Defendant"). Medliant should be held to the terms it selected for its own contract, and this Court should dismiss the Complaint on the grounds of *forum non conveniens.*

Dismissal is also warranted because Medliant fails to state a claim for breach of contract, as the contract Medliant seeks to enforce in this action is not valid and Medliant cannot establish damages from its breach. Medliant claims that because Mr. Mabute did not remain employed for the 5,200 contractual hours identified in the parties' agreement, Medliant was unable to make "a reasonable amount of profit" from his labor. Medliant identifies three sources of purported damages: (1) liquidated damages in the amount of $2,500 per month because Medliant is no longer able to profit from Mr. Mabute's labor; (2) reimbursement of immigration costs and expenses; and (3) attorneys' fees and costs. Each of these claims for damages is foreclosed by either Nevada or federal law. Moreover, the contract is unlawful under both federal and state laws prohibiting employers from procuring or attempting to procure labor by using severe financial penalties or the

---

[1] A "court may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Tex. Health & Human Servs. Comm'n v. U.S.*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (quoting *Sullivan v. Leo Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)). In its Complaint, Medliant refers to, but does not attach, the relevant Contract that the parties agreed to on October 17, 2019. (Compl., ¶¶ 9-14, ECF No. 1.) Mr. Mabute attaches it here as Exhibit 1.

abuse of legal process to punish employees who seek to leave their jobs.

Alternatively, this Court should stay the case pursuant to the principles of comity expressed by the first-to-file rule, which allows courts to "maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999). Medliant filed this case two weeks ***after*** Mr. Mabute filed a case against Medliant in the 8th Judicial District Court in Las Vegas, Nevada (the "Nevada Action").[2] That case, which Medliant removed to the United States District Court for the District of Nevada, raises issues that may substantially duplicate those raised by this contract enforcement action. Therefore, if this Court does not dismiss this case pursuant to the forum selection clause, it should dismiss, transfer, or stay pursuant to the first-to-file rule.

## III.   RELEVANT BACKGROUND

### A.   Factual Background

Medliant is a healthcare staffing company which recruits immigrant workers to the United States for Medliant's healthcare clients. (Compl. ¶¶ 5, 7, ECF No. 1; Contract, at 1.) As a condition of hiring Mr. Mabute, Medliant required him to agree to work 5,200[3] "straight-time hours" and, if he failed to remain employed for that duration, to pay "liquidated damages" in the amount of $2,500 per month for the remaining months of his contract. (Contract, ¶¶ 2(a)-(d).)[4] Medliant's

---

[2] Mr. Mabute and another former Medliant employee are named plaintiffs in that case, *Mabute, et al. v. Medliant, Inc. et al.*, No. A-23-881156-C (Nev. Dist. Ct. Nov. 8, 2023). Medliant has removed that action to federal court in Nevada. *See Mabute and Delgado, et al. v. Medliant Inc., et al.* No. 2:23-cv-02148-APG-DJA (D. Nev.).

[3] If Mr. Mabute worked a standard 36-hour schedule every week for 52 weeks a year with no time off, 5,200 straight-time hours would require nearly 3 years of work.

[4] Thus, for example, if an employee were to leave employment with Medliant after six months, Medliant would purportedly be able to pursue $67,500 in "liquidated damages" from that employee.

purported basis for the penalty is that it "will not have made a reasonable amount of profit in relation to Employer's investment of time, effort, and money in promoting, training, testing, and licensing and otherwise assisting Employee to become a U.S. employee." (Contract, ¶ 2(d); Compl. ¶ 12, ECF No. 1.) In the event of a breach, the Contract also states that Mr. Mabute is responsible for paying to Medliant the costs of immigration and is entitled to an award of reasonable attorneys' fees and costs for enforcement. (Contract, ¶ 2(d); Compl. ¶¶ 14, 24, ECF No. 1.).

Medliant's Contract includes a "Governing Law/Venue" clause, which states:

> This agreement shall be governed by the laws of Nevada. Medliant is incorporated in Nevada and as such, chooses to utilize Nevada law for interpretation and analysis of the herein agreement as well as chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise from time to time. By signing below, you agree to Medliant's choice of venue and choice of law.

(Contract, ¶ 16.)

### B.    Procedural Background

On November 8, 2023, Mr. Mabute and another Medliant nurse, Jeddy Anne Delgado, filed a putative class and collective action lawsuit against Medliant in the 8th Judicial District Court in Las Vegas, Nevada, as required by the forum selection provision in the Contract. (Ex. 2: *Mabute, et al. v. Medliant, Inc. et al.*, No. A-23-881156-C (Nev. Dist. Ct. Nov. 8, 2023) ("Nevada Complaint.")) In that case, they allege violations of the Fair Labor Standards Act ("FLSA") and the Trafficking Victims' Protection Act ("TVPA"). (*Id.*) Medliant removed the action to Nevada federal court on December 28, 2023. (Ex. 3: *Mabute*, 2:23-cv-02148-APG-DJA (D. Nev.), ECF No. 1 ("Removal Motion.")) On January 22, 2024, Mr. Mabute and Ms. Delgado moved to remand the Nevada Action to state court. (Ex. 4: *Mabute,* 2:23-cv-02148-APG-DJA (D. Nev.), ECF No. 19 ("Remand Motion.")). On February 5, 2024, Medliant filed a motion to dismiss the Nevada Action and another motion to transfer the Nevada Action to the Eastern District of Texas or, in

the alternative, to stay. (Ex. 5: *Mabute,* 2:23-cv-02148-APG-DJA (D. Nev.), ECF No. 23 ("Motion to Dismiss."))

## IV.     LEGAL STANDARD

### A.     The Standard for Dismissal for *Forum Non Conveniens*

A valid forum selection clause "represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). While generally, forum selection clauses are enforced via transfer motions, "the proper mechanism to enforce a [forum-selection clause] that calls for litigation in a domestic state court or in a foreign court is through a motion to dismiss on grounds of [*forum non conveniens*]." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016).

The *forum non conveniens* doctrine is codified at 28 U.S.C. § 1404(a). Because "both § 1404(a) and the *forum non conveniens* doctrine from which it derives entails the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 61. "In determining whether venue is proper, 'the [C]ourt is permitted to look at evidence in the record beyond those facts alleged in the complaints and its proper attachments.'" *Huawei Techs. Co., Ltd. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180, at *2 (E.D. Tex. Apr. 25, 2018) (quoting *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009)) (alteration in original). The "plaintiff's choice of forum 'merits no weight'; instead he has the burden of establishing that … [*forum non conveniens*] dismissal is unwarranted." *Weber*, 811 F.3d at 766-67.

Federal law governs the enforceability of a forum-selection clause. *Haynsworth v. The*

5

*Corp.*, 121 F.3d 956, 962 (5th Cir. 1997); *see also Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023). Because of the choice-of-law provision in Medliant's Contract, Nevada law governs the forum selection clause's interpretation. *See Weber*, 811 F.3d at 770 (concluding that German substantive law governed a contract with a Germany choice-of-law provision).

### B.    The Standard for Dismissal Under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), "[a] complaint survives a motion to dismiss only if it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Phillipps v. Wells Fargo Bank, N.A.*, No. 4:16-CV-420, 2016 WL 4703067, at *1 (E.D. Tex. Sept. 8, 2016) (quoting *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). Pursuant to a motion under Rule 12(b)(6), the Court "may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Huawei Techs.*, 2018 WL 1964180, at *2 (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### C.    The First-to-File Rule

Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap. *Cadle*, 174 F.3d at 603. "Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] was no longer up to the [second filed court]

to resolve the question of whether both should be allowed to proceed." *Id.* at 605 (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). Where the first-to-file rule applies, "the district court in which the later action was filed may dismiss, stay, or transfer the suit in order to avoid duplicative litigation and enforce the principle of comity." *Meganathan v. Signal Int'l L.L.C.*, No. 1:13-CV-497, 2015 WL 13906343, at *2 (E.D. Tex. June 17, 2015).

## V.   ARGUMENT

### A.   The Court Should Dismiss Medliant's Complaint for *Forum Non Conveniens*

The Court should dismiss this action for *forum non conveniens* in accordance with the forum selection clause in Medliant's Contract. *See Atl. Marine Const. Co.*, 571 U.S. at 62 (holding that "[w]hen the parties have agreed to a valid-forum selection clause, a district court should ordinarily" honor it). Under Nevada law, forum selection clauses are subject to ordinary principles of contract interpretation, meaning that courts must determine "whether the 'language of the contract is clear and unambiguous." *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739 (2015). "[I]f it is, the contract will be enforced as written.'" *Id.*

Medliant's forum selection clause states that Medliant "chooses to utilize the venue of the 8th Judicial District Court in Las Vegas, Nevada as and for any disputes that may arise from time to time." (Contract, ¶ 16.) That can and should be the end of the Court's inquiry. Per the clear and unambiguous language of Agreement, Medliant chose—at the time the contract was executed—to use a single venue for any disputes that might arise between itself and Mr. Mabute in the future.

Moreover, even if the contract is not clear and unambiguous, the result would be the same, as "[a]ny ambiguity" in a forum selection clause "should be construed against the drafter." *Am. First Fed. Credit Union*, 131 Nev. at 739 (quoting *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev.

212, 215-16, 163 P.3d 405, 407 (2007)). Therefore, the court should honor the forum selection clause in Medliant's contract and dismiss the case pursuant to the doctrine of *forum non conveniens*. *See Atl. Marine Const. Co.*, 571 U.S. at 62.

### 1.    THE FORUM SELECTION CLAUSE IS MANDATORY.

Medliant is likely to argue that the forum-selection clause is permissive rather than mandatory, and therefore does not compel dismissal. Medliant is wrong. "Where a contract contains a forum selection clause, courts determine whether the clause is mandatory, meaning that the specified forum is the exclusive forum agreed upon by the parties, or permissive, meaning that the parties merely consent to venue in a particular forum." *Fed. Nat'l Mortgage Assoc. v. 8th Judicial Dist. Ct. in and for Cty. Of Clark*, 528 P.3d 586 (Table), 2022 WL 19697697, at \*3 (Nev. Dec. 22, 2022)*; see also Coppola v. Baron*, No. 2:07-cv-00664-BES-RJJ, 2007 WL 4180590, at \*2 (D. Nev. Nov. 20, 2007) ("To be a mandatory forum selection clause, the clause must contain language that clearly designates a forum as the exclusive one.").

Here, the text of the forum selection clause mandates the 8th Judicial District Court in Las Vegas, Nevada as the venue in definitive terms. Not only does the clause (which Medliant drafted), state that Medliant "chooses to utilize the venue of the 8th Judicial District Court," it also requires that both parties "agree to Medliant's choice of venue and choice of law." (Contract, ¶ 16.) The forum selection clause here "goes further than signaling merely that [the specified] courts are an appropriate forum," stating not that Medliant **may** choose to utilize the venue of the 8th Judicial District Court for "any" disputes, but that it **does**. *See Fed. Nat'l*, 2022 WL 19697697, at \*2. The parties are given no option between courts, but rather provided with a single venue in which contract claims must be adjudicated. *Id*. Courts across the country have found similar forum selection clauses to be mandatory, including the examples below:

- In *Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995), the Seventh Circuit found that a provision was mandatory where it stated that "place of jurisdiction ... is the registered office of the trustee, to the extent permissible under the law," relying on the "absence of the indefinite article" (i.e., "place of jurisdiction" as opposed to "a place of jurisdiction"), as well as noting that the phrase "to the extent permissible" would have no meaning if the provision was permissive.

- In *Marrero v. Aragunde*, 537 F. Supp. 2d 305, 307 (D.P.R. 2008), *aff'd*, 341 F. App'x 656 (1st Cir. 2009), the court found a provision requiring that "the case will be submitted to the jurisdiction of the Superior Court, San Juan Part, to render judgement" to be mandatory.

- In *S & L Birchwood, LLC v. LFC Cap., Inc.*, 752 F. Supp. 2d 280, 282 (E.D.N.Y. 2010), the court held that a forum selection clause stating that a lessee "irrevocably submits to the jurisdiction of any federal or state court located [in the state of Illinois], and waives to the fullest extent allowed by law any objection to venue in such court" would be enforced as "mandatory" due to the waiver of objections to the chosen forum.

- In *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022), the Seventh Circuit held that a forum selection clause stating that "[a]ny such dispute will be heard and determined" before a federal or state court in Alameda County was mandatory, notwithstanding subsequent language that "each party hereto submits itself and its property to the non-exclusive jurisdiction of the foregoing courts."

It is useful to compare these mandatory forum selection clauses to those that courts have found permissive, which are easily distinguishable. In *Am. First Fed. Credit Union*, for example, the Nevada Supreme Court held that a clause requiring the parties to "submit themselves to the

jurisdiction of the courts of the State of Utah" was permissive. 131 Nev. at 742. The court focused on the language in the forum selection clause that the parties "submit to" jurisdiction, concluding that consenting to jurisdiction in one venue does not implicitly foreclose jurisdiction in all other venues. *Id*. at 740-41 (collecting cases). *Coppola* also provides a useful comparison. There, the plaintiff sought remand to state court based on a contract stating that "venue of any action brought hereon shall be Clark County, Nevada." 2007 WL 4180590, at *2. The court there held that this provision did not require a state court forum because on its face it did "not specify whether the forum is the state court or the federal district court." *Id*. But no one in that case contested that ***some*** Nevada court (either state or federal) was required. *See generally id.*

Here, in contrast, the forum selection clause does not address jurisdiction, does not contain non-mandatory language like "submit to," and does identify the specific state court in Nevada that Medliant "chooses to utilize. . . for any disputes that may arise." (Contract, ¶ 16.) In other words, the parties agreed that the 8th Judicial District Court in Las Vegas, Nevada is the only appropriate venue for actions arising out of the contract. Thus, the clause is mandatory. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (concluding that the clause, "jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado," was mandatory); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76-78 (9th Cir. 1987) (distinguishing between forum selection clauses that specify that a given court has jurisdiction over an action and those that "designat[e] an exclusive forum"). Moreover, even if the court concludes that the forum selection clause is ambiguous as to whether it is mandatory or permissive, it must be construed against Medliant, leading to the same result. *See, e.g., Citro Fla., Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1231 (11th Cir. 1985) (forum selection clause providing that "Place of jurisdiction is Sao Paulo/Brazil" was ambiguous and therefore had to be construed

against the drafter).

In sum, the forum selection clause goes further than simply permitting jurisdiction in the 8th Judicial District Court. The parties specifically and affirmatively agreed to use the 8th Judicial District Court in Las Vegas, Nevada for disputes arising out of the contract. Thus, the forum selection clause is mandatory and must be enforced.

### 2.    NO PUBLIC INTEREST CONSIDERATIONS OUTWEIGH THE PARTIES' CHOICE OF FORUM.

Where, as here, there is a mandatory forum selection clause, it should be enforced absent a strong public interest to the contrary. "Because [public interest considerations] will rarely defeat a transfer motion, the practical result is that [forum-selection clauses] should control except in unusual cases." *Weber*, 811 F.3d at 767 (quoting *Atl. Marine*, 571 U.S. at 63). Public-interest factors to consider include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. "[T]he public-interest factors would outweigh a valid forum clause only in truly extraordinary cases[.]" *Id.* at 776 (citing *Atl. Marine*, 571 U.S. at 62).

Here, the public-interest factors weigh in favor of having this controversy decided in Nevada, and certainly do not present any "truly extraordinary" circumstances that would counsel in favor of ignoring the parties' contractual choice of venue. The first factor of court congestion is neutral because of the difficulties in comparing any court congestion between Nevada state court and this Court. *See In re Planned Parenthood Federation of Am., Inc.*, 52 F.4th 625, 631 (5th Cir. 2022) ("this factor is 'speculative'"). The second and third factors involving local interest weigh in favor of dismissing Medliant's action. Neither party to this case is a resident of Beaumont or the Eastern District of Texas: Medliant is a Nevada corporation with a nationwide business and its

11

headquarters in Tennessee, not a local Beaumont company, and Mr. Mabute lives in Houston in the Southern District of Texas. (*See* ECF No. 1-1 (Civil Cover Sheet listing Medliant's residence as Nevada and Tennessee); Exhibit 6: Declaration of Eliahkim Mabute, ¶¶ 2-3 ("Mabute Decl.")). In addition, Medliant's contract requires application of Nevada law. (Contract, ¶ 16.) Nevada has a stronger interest in adjudicating an action brought by a Nevada corporation based upon application of its own law, and has substantially greater familiarity with that law, than this Court does. *See, e.g.*, *Bustos v. Dennis*, No. SA-17-CV-39-XR, 2017 WL 1049570, at *4 (W.D. Tex. Mar. 17, 2017) (holding that the third public interest factor did not weigh against transfer from the Western District of Texas to Nevada "because the forum-selection clause dictates that the transferee court apply Nevada choice-of-law rules").

Because the public interest factors demonstrate that adjudication of this action should be in Nevada, this Court must dismiss Medliant's action consistent with the parties' forum selection clause. *See White v. Health Carousel, LLC*, No. MO:19-CV-00066-DC, 2019 WL 7824787, at *4 (W.D. Tex. Oct. 18, 2019) (transferring case pursuant to forum selection clause in medical staffing contract and concluding that, "where an FSC is involved, although a forum may have a particular interest in protecting its citizens, that is not the sort of 'exceptional circumstance that justifies disregarding the parties' agreement on public-interest factor grounds'" (quoting *Weber*, 811 F. 3d at 776)).

### B.    The Court Should Dismiss for Failure to State a Claim

"To prevail on a claim for breach of contract, the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages." *Iliescu v. Regional Trans. Comm'n of Washoe Cty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022). "Relating to damages, a plaintiff must prove both (1) a causal

connection between the defendant's breach and the damages asserted, and (2) the amount of those damages." *Id.*; *see also Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*, 105 Nev. 855, 857 (1989) ("The party seeking damages has the burden of proving both the fact of damages and the amount thereof."). Where a plaintiff fails to demonstrate any "breach of contract damages incurred," plaintiff's claim must be dismissed. *Sherman v. Smead*, 572 P.3d 973 (Table), 2023 WL 2960621, at *7 (Nev. Ct. App. 2023).[5]

Here, Medliant fails to allege facts sufficient to prove any element of a breach of contract claim. However, in light of the posture of this case, Mr. Mabute addresses only the damages and validity prongs in this motion.

### 1.  FEDERAL LAW AND REGULATION PROHIBIT MEDLIANT'S RECOVERY OF IMMIGRATION COSTS AND EXPENSES.

Medliant alleges that it is entitled to damages "for the costs of immigration Medliant paid on Mabute's behalf." (Compl., ¶ 14, ECF No. 1.) However, federal regulations do not permit employers like Medliant to "seek or receive payment of any kind for any activity related to obtaining permanent labor certification, including payment of the employer's attorneys' fees . . . or as reimbursement for costs incurred in preparing or filing a permanent labor certification application." 20 C.F.R. § 656.12(b); *see also Kutty v. U.S. Dep't of Lab.*, 764 F.3d 540, 547-48 (6th Cir. 2014) (finding that employers are not permitted to impose immigration costs and expenses on their employees); *Vorrey v. City of Brownsville*, No. 17-cv-222, 2018 WL 7291458, at *9 (S.D.

---

[5] While Medliant may argue that this Court can reform or "blue pencil" the Contract to make unconscionable or unenforceable provisions enforceable, courts interpreting contracts under Nevada law "have long refrained from reforming or 'blue penciling' private parties' contracts." *Golden Rd. Motor Inn, Inc. v. Islam*, 132 Nev. 476, 483 (Nev. 2016); *see also Reno Club, Inc. v. Young Inv. Co.*, 64 Nev. 312, 323 (1947) ("This would be virtually creating a new contract for the parties, which … under well-settled rules of construction, the court has no power to do."); *All Star Bonding v. State*, 119 Nev. 47, 51 (2003) ("We are not free to modify or vary the terms of an unambiguous agreement.").

Tex. Oct. 5, 2018) ("Under federal regulations, an employer may not 'recoup a business expense(s) of the employer (including attorney fees and other costs connected to the performance of H-1B program functions which are required to be performed by the employer, e.g., preparation and filing of LCA and H-1B petition).") (quoting 20 C.F.R. § 655.731(b)(9)(ii)).[6] Medliant is not permitted by law or federal regulation to recoup the costs of immigrations and expenses, including attorneys' fees. Thus, Medliant cannot use these costs as damages to form the basis of a breach of contract claim.

        **2.**      **THE ATTORNEYS' FEES AND COSTS PROVISION IS UNCONSCIONABLE AND UNENFORCEABLE.**

Medliant also alleges it is entitled to an award of its reasonable attorneys' fees and costs. (Compl., ¶ 24, ECF No. 1.) Paragraphs 2(d) and 18 of the Contract state that if it is "necessary to pursue an action or proceeding to enforce the obligations set forth in this Agreement," "Medliant shall also be entitled to an award of reasonable attorneys' fees and costs incurred in attempting to enforce these terms." (*Id.* ¶¶ 2(d), 18.) However, because these terms exclusively enable Medliant to collect attorneys' fees and costs to enforce the terms of the Contract, rather than equitable rights for both parties, this Contract is both substantively and procedurally unconscionable, rendering it unenforceable.

"Generally, both procedural and substantive unconscionability are required before a court will render a contractual provision unenforceable by reason of unconscionability." *Halcyon Silver, LLC v. Evelynmoe*, 526 P.3d 1110, 2023 WL 2661524, at *8 (Nev. Ct. App. Mar. 24, 2023) (citing *Burch v. 2d Judicial Dist. Ct.*, 118 Nev. 438, 448 (2002)). "Procedural unconscionability is present

---

[6] While *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393 (5th Cir. 2010) found that visa and travel expenses are not reimbursable, the Fifth Circuit interpreted specific requirements which applied only to H-2A workers in agricultural professions, which are subject to different requirements and regulations than applicable here.

where a contract is presented on a pre-printed, standardized form, which does not permit the weaker party to negotiate its terms. *Id.* "[T]he circumstances surrounding the formation and negotiation of the contract are relevant, with a focus on whether there was 'an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.'" *Henderson v. Watson*, 131 Nev. 1290, 2015 WL 2092073, at *2 (2015). The "substantive element of unconscionability focuses on the actual terms of the contract and assesses whether those terms are overly harsh or one-sided." *Halcyon Silver*, 2023 WL 2661524, at *8.

Procedural unconscionability is present here because the contract demonstrates no real negotiation and the absence of meaningful choice. A court is not required to enforce an "adhesion contract" where the contract is offered on a take it or leave it basis and the party with less bargaining power is not permitted to negotiate. *Burch*, 118 Nev. at 442 (citing Nev. Rev. Stat. § 104.2302(1)). In *Halcyon Silver*, the court found that because a "work authorization contract was a pre-printed and standardized form, [the defendant] did not appear to have the ability to negotiate regarding the legal fees provision and was instead required to 'take it or leave it.'" 2023 WL 2661524, at *8. "This demonstrates the presence of procedural unconscionability." *Id.*; *see also id.* ("Although appellants suggest that Evelynmoe could have negotiated a different contract, no language in the contract suggests that this was an option."); *Henderson*, 2015 WL 2092073, at *2 ("[T]he fact that the contract is an employment agreement lends some credence to the idea that the contract is a contract of adhesion[.]"). The same conclusion is warranted here. The contract is a standardized form agreement on Medliant's letterhead, which evidences a lack of negotiation and choice on behalf of Mr. Mabute. Thus, the contract demonstrates procedural unconscionability.

The attorneys' fees provision also demonstrates the presence of substantive unconscionability. In *Halcyon Silver*, the court found that an "entirely one-sided" legal fees clause,

requiring only one party to pay legal fees in the event of a contract dispute, was substantively unconscionable and refused to enforce the legal fees provision. *Id.*; *see also Burch*, 118 Nev. at 444 (finding that an arbitration clause is substantively unconscionable because it gave one party the "unilateral and exclusive right" to decide the terms and rules of arbitration). Here, Medliant is the only party entitled to obtain attorneys' fees and costs. (Contract, ¶¶ 2(d), 18.) Regardless of any breach of the contract by Medliant or any action against Medliant, the provision does not permit Mr. Mabute to recover any attorneys' fees or costs. Because this clause is unilateral and exclusively applies to Medliant, it is substantively unconscionable.

Given that the attorneys' fees and costs provisions are both procedurally and substantively unconscionable, they are unenforceable and cannot serve as a basis for damages in this breach of contract action.

### 3.   PLAINTIFF'S CLAIM FOR LIQUIDATED DAMAGES IS AN UNENFORCEABLE PENALTY.

Medliant's third source of alleged contract damages is that Mr. Mabute failed to pay liquidated damages. (Compl., ¶¶ 12, 21, ECF No. 1.) Medliant seeks to recover liquidated damages of $2,500 per month for the remaining months of the parties' contract due to Medliant's "lost profits" accruing from Mr. Mabute's labor. (*Id.*, ¶ 13; Contract ¶ 2(d).)

Where a liquidated damages provision "seeks to impose massive liability for breaching the contract – evidencing its intent to secure compliance," the provision is a penalty and is unenforceable. *Prothera, Inc. v. Zhou Ye*, No. 3:18-cv-00410-MMD-CLB, 2020 WL 3073345, at *6 (D. Nev. June 10, 2020) (finding that the plaintiff did not satisfy its burden to make out a prima facie breach of contract because the liquidated damages clause was unenforceable); *see also Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993) (The "distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance, while liquidated damages is

16

the sum to be paid in the event of non-performance."). Here, Medliant can identify no authority for any right to seek future lost profits due to an employee's resignation. In addition, Medliant fails to plead facts that would support a coherent measurement for what would constitute a "reasonable" profit even if there was such a right.

Rather, the so-called "liquidated damages" Medliant requests here have no basis but to bury Mr. Mabute in debt as a message to him and other employees that they cannot leave Medliant's employ without extreme consequences. This threat is highlighted by the provision in the contract stating that Medliant has previously filed suit for breach of contract against other employees to ensure compliance with the contract term. (Contract, ¶ 2(e).) Further, Medliant's initiation of this action two weeks after Mr. Mabute's resignation and two weeks after Mr. Mabute initiated the Nevada Action against Medliant demonstrates the severity of Medliant's threats to coerce labor.

Thus, Medliant's liquidated damages provision constitutes an unenforceable penalty that cannot serve as the basis for a breach of contract claim.

### 4. THERE IS NO VALID CONTRACT BECAUSE THE CONTRACT AT ISSUE IS VOID AS AGAINST NEVADA'S PUBLIC POLICY.

Because Medliant has not identified any recoverable damages for the alleged breach of contract, the Court's inquiry can end there. But even it if had, the breach of contract claim would fail. "[A]ll contracts the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against policy and void whether in a particular case the purpose of the contract is effectuated." *Western Cab Co. v. Kellar*, 90 Nev. 240, 245 (1974). "A contract operates to the detriment of the public interest when the interest in the contract's enforcement is clearly outweighed by a public policy against enforcement." *Phillips v. Valley View Surgical, LLC*, 498 P.3d 1290, 2021 WL 5370984, at *4 (Nev. Ct. App. Nov. 17, 2021).

17

The Trafficking Victims Protect Act ("TVPA") makes it unlawful to knowingly obtain the "labor or services of a person" by "means of serious harm" or "abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589. The term serious harm includes "psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2); *see also* Nev. Rev. Stat. § 200.463 (prohibiting knowingly subjecting another person to forced labor or services by "abusing or threatening to abuse the law or legal process" or "peonage," which is defined as the "status or condition of compulsory service based upon real or alleged indebtedness").

Contracts where employers, including nursing staffing agencies employing immigrant nurses, subject their employees to thousands of dollars in debt should the employee resign their employment prior to the end of a specified contract term have been found to violate the "serious harm" provision of the TVPA. *See Paguirigan v. Prompt Nursing Employment Agency, LLC*, No. 17-CV-1302 (NG), 2019 WL 4647648, at *2, 8 (E.D.N.Y. Sept. 24, 2019) (finding that, at summary judgment, the defendant violated the TVPA by subjecting immigrant nurses to $25,000 liquidated damages provision to prevent them from leaving employment early); *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850 (KAM) (PK), 2023 WL 2710178, at *3 (E.D.N.Y. Mar. 30, 2023) (granting plaintiff's summary judgment motion and finding that the $60,000 liquidated damages provision in the nurses' employment contract "constitutes a threat of sufficiently serious financial harm to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm under the TVPA"); *see also Fremont Emergency Servs. (Mandavia), Ltd. v.*

*UnitedHealth Group, Inc.*, No. A-19-792978-B, 2020 WL 10353883, at *23 (Nev. Dist. Ct. June 24, 2020) (citing Nev. Rev. Stat. § 200.463) (finding that contracts which "force[] the Health Care Providers to perform services at arbitrarily deflated payment rates and ha[ve] threatened to abuse the law or legal process" can establish a violation of Nevada's forced labor laws).

Here, the Contract wields threats of abuse of the legal process and tens of thousands of dollars in debt to force Mr. Mabute and other employees to persist in unsafe work environments. The Contract uses the threat of legal action, "which Medliant has done previously upon prior Employees breaching the herein Agreement" as a means to prevent Mr. Mabute and other employees from leaving Medliant, regardless of whether the conditions of employment are unsafe or unlawful. (Contract, ¶ 2(e).) The threat of tens of thousands of dollars in liquidated damages and attorneys' fees and costs imposes serious financial harm on Mr. Mabute and Medliant's employees, who are immigrant nurses. Because the Contract uses the liquidated damages provision and threats of lawsuits to subject Mr. Mabute to forced labor by remaining employed with Medliant, the Contract contradicts public policy and is unenforceable. *See* Nev. Rev. Stat. § 200.463; *see also Carton v. B & B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1243-44 (D. Nev. 2011) (finding an insurance contract void because it "violates the law of Nevada"). Once again, Medliant's actions of instituting this action less than two weeks after Mr. Mabute's resignation and less than two weeks after initiation of the Nevada Action demonstrate that Medliant's threats are meant to coerce labor by abuse of legal process and violate public policy. As a result, Medliant fails to allege that an enforceable contract exists.

### C. Alternatively, the Court Should Dismiss, Stay, or Transfer This Action Pursuant to the First-to-File Rule

If the Court grants Mr. Mabute's Motion to Dismiss on any basis, the Court need not examine whether a stay is appropriate. But, out of an abundance of caution, Mr. Mabute also moves

the Court in the alternative to dismiss, stay, or transfer this case to Nevada court pursuant to the first-to-file rule.

As set forth above, Medliant filed this case—and an identical case against Ms. Delgado that is also pending in this Court[7]— two weeks after Mr. Mabute and Ms. Delgado filed the Nevada Action. *See supra*, Section III.B. The Nevada Action, which Medliant removed to federal court,[8] is currently pending in the District of Nevada.[9]

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). This rule is "grounded in principles of comity and sound judicial administration," recognizing that "courts of coordinate jurisdiction and equal rank" should "exercise care to avoid interference with each other's affairs." *Id.* (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985)). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id.*

For the first-to-file rule to apply, the cases need not be "identical." *Id.* Rather, the "crucial inquiry is one of 'substantial overlap'" on the "substantive issues." *Id.* (quoting *Mann Mfg., Inc.*

---

[7]     *Medliant Inc. v. Delgado*, 1:23-cv-000418-MAC (E.D. Tex.).
[8]     For the reasons set forth above, the District of Nevada is not a proper venue pursuant to the terms of the parties' contract, and Mr. Mabute and Ms. Delgado have filed a motion to remand to state court. (*See* Remand Motion.)
[9]     "[F]or first-to-file rule purposes, '[t]he Court considers the date of filing in state court to be the relevant benchmark' for a federal action that has been removed from state court." *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. CIV A H-09-0352, 2009 WL 1544255, at *4 (S.D. Tex. June 2, 2009) (quoting *Igloo Prod. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990)).

*v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)). "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (quoting *Save Power Ltd*, 121 F.3d at 951).

Here, the overlap between the Nevada action and this case is "less than complete," but the parties in the two cases are identical, there is a likelihood of conflict between the two courts, and Nevada has a greater interest in the cases. (*Compare* Complaint ¶¶ 10-14, ECF No. 1, *with* Nevada Complaint ¶¶ 20-29, 127-29, 152-55, 160-63.) The Nevada Action is a putative class and collective action brought against Medliant by Mr. Mabute and Ms. Delgado alleging that Medliant's efforts to prevent workers from leaving their jobs through unlawful debts and threats of deportation violate the FLSA and the TVPA. (*See generally* Nevada Complaint.) This case is an individual contract enforcement action brought by Medliant against Mr. Mabute under Nevada law. (*See generally* Complaint, ECF No. 1.) However, both cases fundamentally ask whether the contract between Medliant and Mr. Mabute is enforceable. (*Compare* Complaint ¶¶ 10-14, ECF No. 1, *with* Nevada Complaint ¶¶ 20-29, 127-29, 152-55, 160-63.) If, in this case, the factfinder determines the contracts are enforceable under Nevada contract law, that would not necessarily foreclose Mr. Mabute's claims in the Nevada Action. A verdict for Mr. Mabute in the Nevada Action, however, would involve a finding that the penalties that Medliant seeks to impose on departing employees, like Mr. Mabute here, violate federal law. In other words, a verdict for Mr. Mabute in the Nevada Action would invalidate the contract and moot the instant case before this Court. Further, as set forth above, the Nevada court's interest in this case is much stronger than this Court's, as neither party to this case is a resident of Beaumont or the Eastern District of Texas, and this case involves

the interpretation of a contract signed abroad and governed by Nevada law. In light of these circumstances, a stay, transfer, or dismissal of Medliant's case against Mr. Mabute would "avoid the waste of duplication, . . . rulings which may trench upon the authority of sister courts, and . . . piecemeal resolution of issues that call for a uniform result." *Save Power Ltd.*, 121 F.3d at 950.

Finally, based on representations made in the Nevada Action, Mr. Mabute anticipates that Medliant will attempt to avoid application of the first-to-file rule through baseless assertions about service of process. Mr. Mabute will respond to Medliant as necessary to correct the record, but who served whom, when, and why is irrelevant for two distinct reasons. One, the first-to-file rule asks which party was the first to file, not the first to serve. *Cf. Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. CIV A H-09-0352, 2009 WL 1544255, at *5 (S.D. Tex. June 2, 2009) (noting that the first-to-file rule is a "pedestrian" one that "is no less applicable even when parallel suits are filed 'almost simultaneously.'") (quoting *Eastman Med. Prods., Inc. v. E.R. Squibb & Sons, Inc.*, 199 F. Supp. 2d 590, 595 (N.D. Tex. 2002). And two, "[t]he Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Huntsman Corp. v. Int'l Risk Ins. Co.*, No. 1:08-CV-029, 2008 WL 1836384, at *5 (E.D. Tex. Apr. 22, 2008); *see also Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 848 (N.D. Tex. 2009) (a motion to transfer in the first-filed case is the proper way to determine where related cases should proceed). Thus, any arguments about whether the first-to-file rule should apply to the Nevada action are properly decided by the Nevada court—which is, in fact, considering them. (Ex. 6: *Mabute*, 2:23-cv-02148-APG-DJA, ECF No. 21 ("Motion to Transfer or Stay.")) [10] In

---

[10] The Nevada court, too, is simultaneously considering the question of the proper forum, further supporting Mr. Mabute's request for a stay in this matter.

accordance with the principles of comity, this Court should not usurp the Nevada court's authority to decide the motion pending before it.

## VI.   CONCLUSION

Medliant filed this action in this Court in violation of the forum-selection clause in the contract, and its complaint must be dismissed on grounds of *forum non conveniens*. In addition, Medliant fails to state a claim for breach of contract because Medliant does not allege any recoverable damages, and the contract is void as against public policy. Alternatively, the Court should dismiss, transfer, or stay this case pursuant to the first-to-file rule.

DATED:        February 20, 2024                   */s/ Anna P. Prakash*

Anna P. Prakash, (generally admitted in
E.D. Tex.)
Joshua R. Cottle, NY Bar No. 5914676*
**NICHOLS KASTER, PLLP**
aprakash@nka.com
jcottle@nka.com
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878

*application for admission pending
*Attorneys for Eliahkim Mabute*

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 20, 2024, I electronically filed a true and correct copy of

Defendant Eliahkim Mabute's Motion to Dismiss Plaintiff's Complaint Or, In The Alternative,

To Stay and Memorandum In Support, along with the accompanying exhibits, with the Clerk of

Court for the U.S. District Court, Eastern District of Texas, through the Court's Electronic Case

Filing system, which will serve all counsel of record listed below:

R. Brandon Bundren
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
bbundren@bradley.com

/s/ *Anna P. Prakash* _____
Anna P. Prakash

*Attorney for Eliahkim Mabute*

24